HARRISON, Judge Pro Tem.
_JiThis case involves a death that allegedly arose from a physical altercation in a bar parking lot. The decedent’s mother sued the bar and its insurer. The trial court granted summary judgment in favor of the bar’s insurer, dismissing it from the suit on the basis that coverage was excluded under its policy’s assault and battery clause. The decedent’s mother appeals. We affirm.
FACTS
On June 8, 2010, McKenzie A. Hudson was at the Library Lounge in Monroe, Louisiana. As he was leaving, he was confronted in the parking lot by an intoxicated Douglas Cox, who hit him in the head twice. Hudson then fell to the ground. In December 2010, he died, allegedly as a result of the severe brain injuries he suffered in the parking lot.
Dayna Frazier Hudson, the decedent’s mother, filed a wrongful death/survival suit on June 3, 2011. Among the defendants was Jager Bomb, LLC, the entity that owned and operated the bar, and its principals, David M. Medlin and Shaw Malo Hall. The plaintiff alleged that these defendants failed in several respects, including (1) not complying with the rules and regulations governing entities that sell alcohol; (2) not having sufficient lighting and security; (3) not establishing reasonable safety and security policies; (4) not properly training employees and enforcing security and safety policies; and (5) not preventing Cox from becoming intoxicated.
On June 24, 2011, the plaintiff filed an amendment to her petition in which she added First Financial Insurance Company (FFIC), the insurer for Jager Bomb, LLC, as a defendant. She alleged that Cox hit her son without 12intending or expecting to cause life-threatening skull and brain injuries. Alternatively, she alleged that the injuries inflicted by Cox were neither life-threatening nor did they create or relate to the brain injury or other life-threatening injuries sustained by her son; instead those were caused when her son lost consciousness while standing and fell to the pavement, fracturing his skull.
On September 2, 2011, FFIC filed an answer in which it admitted issuing a policy to Jager Bomb, LLC. In addition to numerous other affirmative defenses, FFIC contended that the claims against it were barred by various policy exclusions, including “any Assault, Battery or Other Physical Altercation exclusion” or “any Liquor Liability Exclusion, Endorsement, and/or Amendment.”
On September 21, 2011, FFIC filed a motion for summary judgment. It argued that all claims asserted against it should be dismissed with prejudice because they fell under either the assault and battery exclusion or the liquor liability exclusion in its policy. The motion was opposed by the *715 plaintiff, as well as Jager Bomb, LLC, Medlin and Hall.
The matter was argued before the trial court on October 28, 2011, and taken under advisement. On December 7, 2011, the trial court issued written reasons for judgment in which it found that the assault and battery exclusion in FFIC’s policy clearly and unambiguously excluded coverage in the instant case. The trial court also found FFIC had no duty to defend the suit. Holding that the assault and battery exclusion was dispositive, the trial |3court pretermitted consideration of the liquor liability exclusion. A judgment of dismissal with prejudice was signed on December 28, 2011.
The plaintiff appeals.
LAW
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Palmer v. Martinez, 45,318 (La.App.2d Cir.7/21/10), 42 So.3d 1147, writs denied, 2010-1952, 2010-1953, 2010-1955 (La.11/5/10), 50 So.3d 804, 805. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. In re Clement, 45,454 (La.App.2d Cir.8/11/10), 46 So.3d 804. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Palmer v. Martinez, supra.
A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages. Beck v. Burgueno, 43,557 (La.App.2d Cir.9/17/08), 996 So.2d 404. When determining whether a policy affords coverage for an incident, the insured bears the burden of proving that the incident falls within the policy’s terms. Summary judgment declaring a lack of coverage |4under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under, which coverage could be afforded. An insurer seeking to avoid coverage through summary judgment bears the burden of proving that some provision or exclusion applies to preclude coverage. Beck v. Burgueno, supra.
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Because an insurance policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. The parties’ intent, as reflected by the words of an insurance policy, determines the extent of coverage, and the intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning. Washington v. McCauley, 45,916 (La.App.2d Cir.2/16/11), 62 So.3d 173, writ denied, 2011-0578 (La.4/29/11), 62 So.3d 115.
If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written and a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. Washington v. McCauley, supra. However, if after applying the other rules of construction an *716 ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. Elliott v. Continental Casualty Company, 2006-1505 (La.2/22/07), 949 So.2d 1247. An insurance policy should not be interpreted in an unreasonable or strained |smanner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Washington v. McCauley, supra. The determination of whether a contract is clear or ambiguous is a question of law. Washington v. McCauley, supra.
POLICY PROVISIONS
The FFIC policy issued to Jager Bomb, LLC, included an assault and battery exclusion which, in relevant part, provided:
1. Exclusion a. of 2. Exclusions, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, SECTION I — COVERAGES, is replaced by:
This insurance does not apply to:
a. Assault, Battery Or Other Physical Altercation
“Bodily injury” or “property damage”:
(1) Expected or intended from the standpoint of any insured.
(2) Arising in whole or in part out of any “assault” or “battery” committed or attempted by any person.
(3) Arising in whole or in part out of any attempt by any person to avoid, prevent, suppress or halt any actual or threatened “assault” or “battery.”
(4) Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or attempted by any person, or any attempt by any person to avoid, prevent, suppress or halt any actual or threatened verbal or physical confrontation or altercation.
[[Image here]]
This exclusion l.a.(l) through a.(4) ... applies to all acts or omissions and all theories of liability (direct or vicarious) asserted against any insured, | (¡including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort and shall not be subject to any severability or separation of insureds provision in the policy.
The policy defines “assault” as “any willful attempt or threat to inflict injury upon the person of another, when coupled with an apparent present ability so to do, and any intentional display of force such as would give a victim reason to fear or expect immediate bodily harm.” “Battery” is defined as “wrongful physical contact with a person without his or her consent that entails some injury or offensive touching.”
DISCUSSION
The plaintiff argues that the policy language is ambiguous at least to the extent that the extraordinary injuries sustained by her son were beyond those the insured would expect or intend would arise from an assault at its establishment. She also distinguishes the exclusion clause language in all of the cases cited by the insurer as being grammatically dissimilar.
Specifically, the plaintiff argues that FFIC’s policy language formerly contained an “or” between the two sections of its assault and battery exclusion. She contends that the use of the disjunctive “or” was an important factor in the Third Circuit’s decision to dismiss FFIC in Brown v. Yacht Club, 96-757 (La.App.3d Cir.12/26/96), 685 So.2d 670, a case involving a battery outside a nightclub wherein *717 the insurer was granted summary judgment on the basis that its assault and battery clause excluded coverage. Sometime after the Brown decision, the “or” between the two sections was removed from FFIC’s assault and battery exclusion language 17when it was apparently rewritten to include four sections. The plaintiff contends that this change suggests that FFIC intended to broaden its coverage to include extraordinary injury arising from assault and battery. According to the plaintiffs interpretation, the removal of the “or” means that all of the exclusion provisions must be read together. This construction would eliminate coverage only for the “intended” or “expected” injuries arising out of an assault and battery, as set forth in section a(l). Since her son’s assailant did not intend or expect to seriously injure or kill him, she maintains that coverage should be provided.
FFIC, on the other hand, argues that numerous cases in Louisiana jurisprudence have upheld the application of assault and battery exclusions in situations similar to the one presented here and dismissed the insurers.
Assault and battery exclusions have become commonplace in policies issued to operators of bars, restaurants and similar businesses with a party atmosphere to expressly exclude such acts from coverage. Hickey v. Centenary Oyster House, 97-1074 (La.10/20/98), 719 So.2d 421. As a result, Louisiana courts have been called upon to address their application in many lawsuits against these sorts of establishments. Our review of the jurisprudence reveals that the policy provisions in these cases are sometimes similar but infrequently identical. However, the conclusion we draw from the overwhelming majority of cases is that insurers that have assault and battery exclusions in their policies are generally dismissed from suits against their insureds arising from injuries or deaths following an assault or battery. This is true regardless of the theory of recovery put forth by the | ^plaintiff— whether it be negligence, intentional tort, nuisance, premises defect, or the like.
For example, see the following cases in which insurers were dismissed due to the assault and battery exclusions in their policies: Straughter v. Hodnett, 42,827 (La.App.2d Cir.1/9/08), 975 So.2d 81, writ denied, 2008-0573 (La.5/2/08), 979 So.2d 1286 [bar patrons stabbed by fellow patron; plaintiffs asserted nuisance claims]; Monton v. Thomas, 2005-926 (La.App.3d Cir.3/1/06), 924 So.2d 394 [bar patron allegedly hit fellow patron in the face with bottle; exclusion applies even if self-defense]; Proshee v. Shree, Inc., 2004-1145 (La.App.3d Cir.2/2/05), 893 So.2d 939 [hotel patron beaten and robbed in parking lot; exclusion applies even in face of allegations of premises defect claim]; Maise v. Cat’s Meow, Inc., 96-1998 (La.App.4th Cir.10/16/96), 683 So.2d 846 [patrons injured in altercation at bar; assault and battery exclusion applied irrespective of fault alleged by plaintiffs (whether negligence, intentional act or otherwise) where injuries arose out of battery]; Washington v. Spurlock, 97-2411 (La.App.4th Cir.12/17/97), 703 So.2d 1378, writ denied, 98-0173 (La.3/20/98), 715 So.2d 1214 [bar patron shot when caught in crossfire during robbery; assault and battery exclusion applicable despite allegations of negligence against bar owner because “[s]imply put the respondent was injured by a battery— no battery, no injuries.”]; Cortinez v. Handford, 490 So.2d 626 (La.App.2d Cir.1986) [bar patron sustained fractured ankle when knocked to floor by another patron; exclusion applied despite variety |flof allegations including bar’s failure to protect patrons, service of alcohol to intoxicated patrons, and failure to employ effective security personnel].
*718 The Third Circuit dismissed FFIC from two lawsuits involving policy language similar to that found in the instant case. A primary difference in the language in FFIC’s policy in those cases and the present one was the inclusion of the word “or” between sections a(l) and a(2).[1] In Jones v. Yacht Club, 96-300 (La.App.3d Cir.10/23/96), 682 So.2d 816, the plaintiff allegedly suffered injury as the result of a beating outside a nightclub. The trial court granted summary judgment in favor of the club’s insurer. The appellate court affirmed, finding that the policy language was unambiguous and that liability on the part of FFIC’s insured that might result from a battery on the club premises fell squarely under the assault and battery exclusion. The court held that there was “simply no coverage for the insured’s potential liability resulting from a battery, whatever the theory or theories of law the tort claimant advances in a potential action against First Financial’s insured.” In Brown v. Yacht Club, supra, a nightclub patron was seriously injured in an altercation with the club operators outside the club. FFIC’s motion for summary judgment was granted by the trial court; the |inappellate court affirmed, finding that section a(2) of the assault and battery was applicable. While noting its prior decision in the Jones case, the court also observed that the use of “or” between the provisions caused the sentence to be read disjunctively so that either element number one or element number two might result in exclusion of coverage.
However, in Gaspard v. Northfield Insurance Company, 94-510 (La.App.3d Cir.11/2/94), 649 So.2d 979, writ denied, 94-2906 (La.2/9/95), 650 So.2d 1166, the Third Circuit dealt with a grammatical construction argument similar to the one being made by the plaintiff in the instant case. There Mr. Gaspard was shot and killed during a robbery attempt as he left a bowling alley. His family sued several entities including the owner of the building where the bowling alley was located and its insurer. The trial court granted summary judgment in favor of the insurer dismissing it from the suit on the basis that its policy contained an assault and battery exclusion which was clear and unambiguous. The exclusion in that case stated:
2. Exclusions
This insurance does not apply to:
a. “Bodily injury” or “property damage”:
(1) expected or intended from the standpoint of any insured.
(2) arising out of assault and battery, or out of any act or omission in connection with the prevention or suppression of an assault and battery.
The appellants in Gaspard contended that the exclusion was ambiguous because, after reading the entire insurance policy, it was not clear whether to read clauses (1) and (2) conjunctively or disjunctively. lnThey pointed to other policy provisions where exclusions were connected either by the word “and” or “or.” The appellants argued that if the clauses were connected *719 by “and,” then the clauses should be read conjunctively and the exclusion did not apply because it was a third party, not the insured, who shot Mr. Gaspard. However, the appellate court found that a reading of the entire policy revealed that not every exclusion was connected by “and” or “or,” thus negating their theory. Furthermore, the court noted that each clause at issue had a period after it which indicated the end of a thought and that each contained an exclusion entirely separate from the other. The appellate court affirmed the lower court, finding that there was no ambiguity due to grammatical construction and that the plain meaning of each clause was clear.
We have reviewed the policy language at issue here. We find no ambiguity in the assault and battery exclusion. Like the court in Gaspard, supra, we are not persuaded that all of the provisions of the exclusion must be read together. Each of the four provisions ends with a period and contains a complete and separate exclusion.[2] Section a(2) of the exclusion excludes bodily injury arising out of any “assault” or “battery” by any person. There is no question that the physical attack upon McKenzie Hudson falls within the policy definition of a “battery” and that he suffered bodily injury as a result. Therefore, we find that the assault and battery exclusion in FFIC’s policy clearly excludes coverage in a situation such as | j2the attack upon the plaintiffs son. Like the trial court, we find that summary judgment in favor of FFIC is appropriate.
CONCLUSION
The trial court decision granting summary judgment in favor of First Financial Insurance Company is affirmed. Costs of this appeal are assessed to the appellant, Dayna Frazier Hudson.
AFFIRMED.

. The exact language in the Jones policy was:
EXCLUSION — ASSAULT OR BATTERY
Exclusion a. of COVERAGE A (Section 1) is replaced by the following:
a. "bodily injury,” "property damage,” or "personal injury”:
(1) Expected or intended from the standpoint of any insured; or (2) Arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery.
The only substantial difference in the Brown policy was found in section a(l), which said “the insured” instead of "any insured.”

. By contrast, in the Brown and Jones cases, the first of the two provisions in the assault and battery exclusion ended with a semicolon, arguably maiding the use of the word "or” between them more relevant.